UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PATRICIA GALICZ,<br><br>                     Plaintiff,<br>   v.<br><br>MICHAEL J. ASTRUE. Commissioner of Social Security,<br><br>                     Defendant. | Case No. 3:11-cv-06017BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for September 14, 2012 |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On February 12, 2009, plaintiff filed an application for SSI benefits, alleging disability as of December 1, 2000, due to arthritis, degenerative disc disease, posttraumatic stress syndrome, and depression. <u>See</u> Administrative Record ("AR") 18, 190. That application was denied upon initial administrative review on June 30, 2009, and on reconsideration on September 16, 2009.

REPORT AND RECOMMENDATION - 1

See AR 18, 78, 96.  A hearing was held before an administrative law judge ("ALJ") on January 13, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 37-69.

On January 20, 2011, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 18-29.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 13, 2011, making the ALJ's decision defendant's final decision.  See AR 1; see also 20 C.F.R. § 416.1481.  On January 6, 2012, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #5.  The administrative record was filed with the Court on March 13, 2012. See ECF #12-13.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for further administrative proceedings, because the ALJ erred: (1) in failing to make specific findings regarding the length of time she can stand and/or walk in a regular workday in assessing her residual functional capacity; and (2) in failing to properly consider the opinions of Dennis Koukol, M.D., and Amy Cowan, M.D.  For the reasons set forth below, the undersigned agrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be reversed and that this matter be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination.  See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

REPORT AND RECOMMENDATION - 2

support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent

REPORT AND RECOMMENDATION - 3

with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with residual functional capacity:

> **. . . to perform light work as defined in 20 CFR 416.967(b) except [she] can occasionally stoop, kneel, crunch, crawl, and climb ramps or stairs. She cannot climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to noxious fumes and odors. She can perform only simple, entry level work. She can have occasional interaction with coworkers, but should have no interaction with the public.**

AR 21-22 (emphasis in original). Plaintiff argues that although the ALJ found she was capable of performing light work, he erred in not making a specific finding as to how long she can stand and or/walk in a regular work day. The undersigned agrees.

As noted above, the ALJ expressly found plaintiff to be able to perform "light work" as that term is defined in 20 C.F.R. § 416.967(b), which is as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. *Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing*, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b) (emphasis added). Although the actual amount of walking or standing is not described in any greater detail in the above regulation, Social Security Ruling ("SSR")[1] 83-10 provides that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." 1983 WL 31251 *6.

---

[1] "Social Security rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations." Chavez v. Department of Health and Human Services, 103 F.3d 849, 851 (9th Cir. 1996). Although "[t]hese rulings are interpretative rulings and do not have the force of law," the courts are to defer to them, "unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." Id. As no showing has been made that SSR 83-10 – or SSR 96-8p, 1996 WL 374184, discussed below – is plainly erroneous or inconsistent with the Social Security Act, the undersigned shall defer to it here.

REPORT AND RECOMMENDATION - 4

In addition, in assessing a claimant's RFC in terms of "[e]xertional capacity" – i.e., the "limitations and restrictions of physical strength and . . . remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling" – the ALJ is required to consider "[e]ach function . . . separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine activities (e.g., 'walk/stand, lift/carry, push/pull')." SSR 96-8p, 1996 WL 374184 *5.  SSR 96-8p further explains the need for such "function-by-function" consideration in assessing a claimant's residual functional capacity:

> . . . The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. At step 4 of the sequential [disability] evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.
>
> RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy.  However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.
>
> At step 5 of the sequential evaluation process, RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do.  However, in order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual[']s capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level.

REPORT AND RECOMMENDATION - 5

Case 3:11-cv-06017-BHS   Document 18   Filed 08/29/12   Page 6 of 13

> Initial failure to consider an individual's ability to perform the specific work-related functions could be critical to the outcome of a case. . . .

Id. at *3.

Defendant argues the function-by-function analysis described above is not required where the ALJ's RFC assessment "takes into account those limitations supported by the reliable record." ECF #16, p. 8 (citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (holding that "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record [wa]s unnecessary.")).  The problem for defendant, though, is that the ALJ in this case did not properly take into account the evidence in the record concerning plaintiff's ability to stand and walk.  Because, as discussed above, the ALJ did not further describe plaintiff's exertional capabilities beyond finding her to be capable of performing light work as defined by 20 C.F.R. § 416.967(b), and because, also as discussed above, SSR 83-10 provides that the full range of light work requires the ability to stand or walk for approximately six hours in an eight-hour workday, the ALJ in effect found plaintiff was able to stand or walk for this length of time.

Accordingly, the undersigned rejects plaintiff's assertion that the ALJ did not make any finding regarding her ability to stand and/or walk, even though the ALJ did not separate out that ability in assessing her RFC as required by SSR 96-8p.  The objective medical evidence the ALJ relied on in this case, however, does not support that finding.  Specifically, in so finding the ALJ stated in relevant part as follows:

> The record contains a physical assessment submitted on behalf of [Disability Determination Services] by a disability analyst in June 2009. (Exhibit 31F).  A disability analyst is not an acceptable source to offer a medical opinion.  However, Dennis Koukol, MD, affirmed the assessment as it is written. (Exhibit 37F).  According[ly], analysis of the physical assessment will proceed as if Dr. Koukol was its original author.  Upon review of the record,

REPORT AND RECOMMENDATION - 6

Dr. Koukol listed the claimant's primary physical diagnosis as degenerative disc disease and her secondary diagnosis as asthma.

He opined that the claimant, with certain limitations, is capable of performing work in the light exertion range. The postural limitations proposed by Dr. Koukol include occasional crawling, crouching, kneeling, stooping, balancing, and climbing ramps or stairs, but never climbing ladders, ropes, or scaffolds. For environmental limitations, Dr. Koukol felt the claimant should avoid concentrated exposure to extreme temperatures, wetness, humidity, vibration, fumes, and workplace hazards. Dr. Koukol reviewed the record and proffered an opinion that is generally consistent with the objective medical evidence. While the undersigned does not believe the objective medical evidence warrants all of the limitations proposed by Dr. Koukol, the residual functional capacity finding nevertheless incorporates elements of Dr. Koukol's assessment. Accordingly, the undersigned affords great weight to Dr. Koukol's opinion.

. . .

Amy Cowan, MD, performed a physical evaluation of the claimant in May 2009. (Exhibit 29F/3-8). She recorded the claimant's chief complaints as back pain, arthralgias in the knees, hips, and shoulder, and mental illness diagnosed as bipolar, depression, and posttraumatic stress disorder. Dr. Cowan also noted the claimant's history of bilateral carpal tunnel release surgeries and a left knee ACL reconstruction. The claimant acknowledged a history of marijuana and methamphetamine use, and she claimed to have last used three years earlier.

Upon examination, the claimant appeared to be uncomfortable when seated. However, she climbed on and off the examination table without difficulty, and she did not exhibit difficulty removing her shoes. The claimant demonstrated finger-to nose coordination, and she made heel-to-knee and heel-to-toe transfers. Dr. Cowan examined the range of motion in the claimant's major joints. The claimant gripped and held objects to the palm by the last three digits; she grasped and manipulated object with the first three digits. She exhibited no evidence of myotonia or grip release. Sensation to touch was normal in all five fingers. The claimant exhibited tenderness over the thoracic-lumbar junction, and she had some weakness in the bilateral lower extremities.

Dr. Cowan assessed the claimant with bipolar and depression, asthma, back pain most likely related to degenerative disc disease, and tobacco use. Regarding the claimant's abilities and limitations, Dr. Cowan opined that the claimant can lift and carry up to 20 [pounds] occasionally and ten pounds frequently. She believed the claimant can stand and walk up to four hours of an eight-hour workday. She also felt the claimant can perform only

REPORT AND RECOMMENDATION - 7

>occasional stooping, kneeling, and crouching. Dr. Cowan further opined that the claimant should not work around temperature extremes or fumes, dusts, chemicals, or gasses. Dr. Cowan examined the claimant and proffered an opinion that is consistent with the objective medical evidence. This decision incorporates many elements of her assessment. Accordingly, Dr. Cowan's opinion receives great weight.

AR 26-27.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

REPORT AND RECOMMENDATION - 8

1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Id. at 830-31.  However, the ALJ "need not discuss all evidence presented" to him or her.  Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected."  Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.  See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole."  Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record."  Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

As plaintiff notes, contrary to the ALJ's findings, Dr. Koukol opined that she would be capable of standing for at least two hours in an eight-hour workday, not the approximately six hours required in order to be able to perform the full range of light work.  See AR 1068.  Further, as the ALJ himself pointed out, Dr. Cowan opined that plaintiff could stand and walk for up to only four hours in an eight-hour workday.  See AR 1053.  But despite giving the opinions of Dr. Koukol and Dr. Cowan great weight, the ALJ assigned a less restrictive limitation on the ability

REPORT AND RECOMMENDATION - 9

Case 3:11-cv-06017-BHS   Document 18   Filed 08/29/12   Page 10 of 13

to stand and walk than did either medical source, without adequately explaining why he was doing so.[2] As such, the ALJ erred in regard to this failure on his part. Although defendant sets forth a number of reasons as to why the ALJ's RFC assessment should be upheld (see ECF #16, pp. 3-7), none of them were provided by the ALJ, nor can they reasonably be inferred from his decision. See AR 26-27; Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (refusing to accept invitation to dismiss error as harmless if doing so would require affirming denial of benefits on ground not invoked by defendant in denying benefits originally); Pinto v. Massanari, 249 F.3d 840 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.").

If a claimant cannot perform his or her past relevant work as the ALJ found in this case (see AR 28), at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony

---

[2] In regard to Dr. Koukol's opinion, the ALJ did state that while he did "not believe the objective medical evidence warrants all of the limitations proposed by Dr. Koukol, the [ALJ's] residual functional capacity finding nevertheless incorporates elements of Dr. Koukol's assessment." AR 26. The ALJ, however, did not state what that objective medical evidence was, which proposed limitations were not warranted thereby or which specific elements of Dr. Koukol's opinion assessment he was incorporating, although the latter two of these can be inferred from the residual functional capacity assessment the ALJ provided in his decision. Such inadequate general findings are insufficient to properly reject the opinion of even a non-examining physician, such as Dr. Koukol. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).

REPORT AND RECOMMENDATION - 10

therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 63-64. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform the jobs of maid/housekeeper, small products assembler, hand packager, and extruder machine operator. See AR 64-66. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy, namely the three jobs of maid/housekeeper, small products assembler and hand packager. See AR 28-29.

Plaintiff argues, and the undersigned agrees, that because the ALJ erred in evaluating the opinions of Dr. Koukol and Dr. Cowan concerning her ability to stand and walk, and thus in assessing her residual functional capacity, he also erred in finding her to be capable of performing the above three jobs. That is, because of those errors, it cannot be said that that the hypothetical question the ALJ posed to the vocational expert was complete or accurate, and therefore that the ALJ's reliance on the vocational expert's testimony to find plaintiff not disabled at step five was supported by substantial evidence. Although defendant notes the vocational expert testified as well that a limitation to standing and walking no more than two hours in an eight-hour workday would not eliminate the job of extruder machine operator, the

REPORT AND RECOMMENDATION - 11

ALJ did not find plaintiff could perform that job. See AR 28-29, 66-67. As such, this testimony cannot be relied on to uphold the ALJ's step five finding in this case.

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to the medical evidence in this case regarding plaintiff's ability to stand and walk, residual functional capacity and capability of performing other jobs existing in significant numbers in the national economy, remand for further administrative proceedings is warranted in this matter.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ

REPORT AND RECOMMENDATION - 12

improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **September 14, 2012**, as noted in the caption.

DATED this 29th day of August, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13